# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGELA BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16-CV-05669 |
| ) | |
| NORTHWESTERN MEDICINE LAKE ) | Judge John J. Tharp, Jr. |
| FOREST HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Baker has sued her former employer for sex, race, and disability discrimination. Baker, a white woman with a connective tissue disease and anxiety, alleges that a coworker harassed her because of her sex and her employer did nothing when she reported it. She also alleges she was disciplined while a non-white coworker was not disciplined for similar infractions. After two warnings for failure to follow work procedures, she was fired for a more serious infraction. Baker further contends that her employer, Northwestern Medicine Lake Forest Hospital ("Northwestern") discriminated against her on the basis of her disability. Northwestern has moved to dismiss under Rule 12(b)(6). For the reasons stated below, the motion to dismiss is denied as to her race and sex claims, and granted as to her disability claims.

## BACKGROUND

For the purposes of this motion, the Court accepts the facts alleged in the complaint as true and draws all inferences in plaintiff Angela Baker's favor. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 402 (7th Cir. 2010). Baker is a Caucasian woman who has been diagnosed with

scleroderma[1] and anxiety. Third Am. Compl. ("Compl.") ¶ 4. She was hired by Defendant Northwestern Medicine Lake Forest Hospital ("Northwestern") around December 2005 as a histotechnician.[2] *Id*. at ¶ 7.

As a result of her scleroderma, the skin on Baker's fingers and toes will often crack and become infected. *Id*. at ¶11. She also suffers from fatigue and pain in her muscles and joints. *Id*. at ¶ 10. As a result of her disease, Baker also has depression and anxiety. *Id*. at ¶ 13. According to Baker, many of her managers and HR personnel were aware of her scleroderma and anxiety, although not Ruben Carter, another histotechnician who worked in the same lab. *Id.* at ¶ 15. Carter is male, non-white, and has no visible disabilities. *Id*. at ¶16.

According to Baker, Carter began harassing her in August of 2014. Compl. ¶ 16. Among other things, Carter would yell at her, slam and pound on counters and equipment, slam his backpack onto counters behind her, wave his arms at her (nearly hitting her), swear at her, threaten to report her to management, refuse to speak with her about work, and otherwise taunt and threaten her (including "I can talk to you any way I want to" and "don't walk near me"). *Id*. On at least two occasions, Baker alleges, Carter made sexual comments to her (once saying "because you like it that way" while leaning within two inches of her face, another time by suggesting they "meet outside the hospital and discuss this" in a sexual tone). *Id*. Baker says she frequently reported Carter to management, but nothing was done. *Id*. at ¶ 17. Specifically, when

---

[1] Sclerodoma is "a group of rare diseases that involve the hardening and tightening of the skin and connective tissues—the fibers that provide the framework and support for your body." Mayo Clinic, *Scleroderma Overview*, http://www.mayoclinic.org/diseases-conditions/scleroderma/home/ovc-20206014.

[2] A histotechnician is a laboratory assistant who prepares slices of tissue for pathologists to examine under microscopes in order to diagnose diseases or conduct research. *See What is Histotechnology*, NAT'L SOC'Y FOR HISTOTECHNOLOGY (2017), http://nsh.org/what-histotechnology.

she reported the two sexual incidents to her supervisor, the manager "laughed it off and did not believe [Baker]." *Id*. at ¶ 18-19.

As the issues with Carter escalated, Northwestern forced Baker to participate in an Employee Assistance Program (EAP), but did not require Carter to participate. Compl. ¶ 21. After she was forced to participate in EAP, Carter made several derogatory comments about her mental health, including telling her to complain to a psychologist and telling her to take her medication. *Id*. at ¶ 22. Baker alleges Carter was "violent and intimidating" on a daily basis. *Id*. at ¶ 23.

Baker filed an EEOC charge alleging sex and disability discrimination and hostile work environment on September 22, 2015. *Id*. at ¶ 32. Before filing her EEOC complaint, Baker had twice been written up for making errors (once for mislabeling slides, another time for interrupting Carter's work) but Carter was not written up for making similar errors. *Id.* at ¶ 24-25. She was terminated from Northwestern on May 12, 2016 for a third, more serious, infraction in which she threw out a patient's tissue specimen because she had neglected to process it when she should have. *See* Compl. ¶ 33, Def.'s Ex. 1, ECF No. 20.[3] Within 90 days of receiving her right to sue letter with the EEOC, Baker filed this lawsuit. Compl. ¶ 34. Northwestern has moved to dismiss all of her claims.

---

[3] Baker's complaint refers to the disciplinary reports she received, ¶¶ 24-25 and 33, but does not describe their content in detail and did not attach them to the complaint. Northwestern included copies of the reports with its motion to dismiss, as it is permitted to do when the documents are referenced in the complaint and central to the claims. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Baker, moreover, does not object to consideration of the reports; rather, she maintains that they support her claims.

**DISCUSSION**

Baker's operative complaint raises three claims.[4] First, she alleges that she was subjected, in violation of Title VII, to a "sexually hostile work environment." Compl. ¶ 36. Second, Baker alleges that she was racially discriminated against, in violation of 42 U.S.C. § 1981, when she was terminated after her third write-up. *Id.* at ¶ 42. Third, she alleges that she was subjected to disability discrimination when Northwestern failed to protect her from a hostile work environment. *Id.* at ¶ 47. Northwestern has moved to dismiss all three claims.

**I. Title VII Sexual Harassment**

A plaintiff claiming sexual harassment must generally show: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment she complained of was based on her sex; (3) the conduct was either severe or pervasive; and (4) there was a basis for employer liability." *Passananti v. Cook County*, 689 F.3d 655, 664 (7th Cir. 2012). The harassment at issue may be overtly sexual or simply sexist. *Id*. "To rise to the level of an actionable hostile work environment, the complained-of conduct must have been sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment." *Id.* at 667. In a hostile work environment, the workplace is "permeated with discriminatory intimidation, ridicule, and insult," but there is no "magic number" of incidents required. *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001). Verbal harassment that continues once an employee has protested her treatment is "indicative of a hostile environment," even if some of the later remarks and behaviors are not explicitly sexist (as long as they "may reasonably be construed as being motivated" by animus). *Id*.

---

[4] The operative complaint is the Third Amended Complaint ("TAC"). Northwestern's motion to dismiss was originally filed against the Second Amended Complaint. Baker amended her complaint to drop several claims during the briefing of the motion to dismiss. The Court addresses only the claims and arguments are relevant to the TAC.

4

Northwestern makes two arguments why the sexual harassment claim should be dismissed. First, Northwestern claims there is insufficient evidence to support Baker's claim that Carter's conduct was motivated by sexist animus because "the only reasonable inference that can be drawn from Plaintiff's allegations is that Mr. Carter and Plaintiff very much disliked one another" and the allegations do not give rise to an inference that "such dislike was motivated by Plaintiff's gender, much less that Mr. Carter desired a romantic or sexual relationship with Plaintiff." Def.'s Mem. at 12. In its reply, Northwestern goes so far as to argue that "Plaintiff has not alleged *any* conduct by Mr. Carter that was arguably sexual in character." Def.'s Reply at 2 (emphasis in original, quotation marks omitted). Second, Northwestern argues that Baker failed to provide notice that Carter was harassing her based on her gender. *See id.* at 4-5.

Northwestern's first argument misapprehends the nature of Baker's sexual harassment claim. Sexual harassment can include "unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature" but it can include other behaviors as well. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). Those other behaviors need not be explicitly discriminatory, as long as there is "a reasonable inference tying the harassment to the plaintiff's protected status." *Cole v. Bd. of Trs.*, 838 F.3d 888, 896 (7th Cir. 2016). Furthermore, as the Supreme Court has said, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). Whether Carter had any interest in having sex with Baker is not determinative of whether his conduct constituted sexual harassment. The question is whether he engaged in harassing conduct on account of her sex—that is, because she is a woman. And while it is assuredly the case that a great deal of the harassment women receive in the workplace is sexual in nature, that is not the only form of harassment women encounter because

they are women. And it is the unfortunate reality that much of the harassment that is ostensibly sexual in nature has as much or more to do with intimidation and the maintenance of male superiority in the workplace.[5]

It is, of course, possible that, as Northwestern argues, Baker and Carter just didn't like each other very much. At this stage, however, Baker need only lay out a plausible claim, which means the Court cannot "decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A sex discrimination complaint need only set out the adverse action (here, harassment) and that it occurred because of the plaintiff's sex. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). Baker has alleged two specific incidents in which she believed Carter was "coming on to her"; that is a plausible take on Carter's conduct that the Court must credit for purposes of this motion. In addition, Baker has alleged numerous other incidents of aggression (including "I can talk to you any way I want to," yelling at her while slamming or pounding on counters, and slamming his bag onto the counter behind Baker) that can plausibly be construed as efforts, based on her sex, "to intentionally frighten and intimidate her" through physically aggressive conduct. Compl. ¶ 16. Baker asserts this sort of intimidating behavior occurred "daily." *Id*. at ¶ 23. Taken together, these incidents state a plausible claim that her work environment was subjectively and objectively offensive, based on sex, and sufficiently severe and pervasive. *See Lueveano,* 722 F.3d at 1028 n. 8. It may turn out that there were more compelling reasons for Carter's conduct, or that the conduct did not occur as Baker describes. But the Court cannot make that assessment,

---

[5] *See* Christina A. Bull, Comment, *The Implications Of Admitting Evidence Of A Sexual Harassment Plaintiff's Speech And Dress In The Aftermath Of* Meritor Savings Bank v. Vinson*,* 41 UCLA L. Rev. 117, 119 (1993) ("sexual harassment is often a manifestation of power, not an expression of sexual desire").

particularly at this juncture with the liberal pleading standard afforded to employment discrimination cases.

Northwestern's second objection to the sexual harassment claim can be quickly dispatched. An employer cannot be liable under Title VII unless the employer knew of the problem (for example, from an employee making a complaint). *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 373 (7th Cir. 2007). Here, Baker specifically alleged that she reported each of Carter's explicitly sexual comments to her supervisor (Cathy Hart), who laughed it off and did nothing. Compl. ¶ 18-19. Baker asserts that she reported Carter's other behaviors "numerous times" but nothing was done because "no witnesses" could be found. *Id.* at ¶ 17. This latter comment implies Northwestern may have done some sort of investigation, and certainly had notice of the sexual comments and aggressive behavior taking place in its lab. Such knowledge is sufficient to plead a sexual harassment claim at the motion to dismiss stage. Therefore, the motion to dismiss is denied as to the sexual harassment claim.

**II. Race Discrimination**

Next, Baker raises a race discrimination claim as to her termination. Essentially, Baker argues that she was twice "written up" (disciplined) for minor infractions while Carter (who is a different race)[6] was not written up for similar infractions. *See* Compl. ¶ 24-25. She alleges that without these two write-ups, she would not have been terminated for her final infraction.

Northwestern first argues that Baker has failed to demonstrate she was terminated because of her race, because the handling of the third incident was unconnected to race. *See* Def.'s Mem. at 9. The Seventh Circuit, however, has set an exceptionally low bar to the pleading

---

[6] The complaint alleges that Carter is "Black" while Northwestern asserts he is "Hispanic." *See* Compl. ¶ 16; Def.'s Mem. at 3. Either way, the relevant information for Baker's purposes is that she is white and Carter is not.

of causation in racial discrimination cases. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). Here, Baker has alleged that she would not have been written up for her previous offenses if she was non-white, and that Carter had committed similar errors but had not been disciplined. But for that discriminatory discipline, Baker alleges, she would not have been terminated. These allegations suffice. If it would be sufficient for Baker to plead that she had been treated differently with regard to the third incident (as *Swanson* indicates it would), the Court cannot hold that it is insufficient to plead that the two underlying write-ups were discriminatory and that they caused her termination.

Next, Northwestern contends that Baker's "three strikes and you're out" theory is too implausible to pass muster under Rule 12(b)(6). It essentially argues that ***factually*** such a policy never existed, and attaches the written disciplinary form to contradict Baker's allegations. *See* Def.'s Mem. at 7, Def.'s Ex. 1 at 3. A document outside the pleadings controls when it is incorporated by reference or attachment and directly contradicts the assertions in the complaint. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

The discharge form, however, does not directly contradict Baker's allegations. It shows "Discharge" as a checkbox option along with "Verbal/First Warning," "Written/Second Warning," "Suspension," and "Pre-Termination Final Warning." *See* Def.'s Ex. 1 at 3. The form lists Baker's two previous write-ups as well as three "coaching sessions." *Id*. The form does not state whether or not previous warnings are required for termination. As Northwestern points out, surely the three strikes policy (if it exists) does not apply in every situation. For example, a worker would not be given a verbal warning for stabbing a colleague. However, whether or not Baker's third infraction was so severe (as Northwestern asserts it was) that she would have been terminated regardless is a factual issue. Accepting the allegations of the complaint, Baker would

not have been terminated without the two (plausibly discriminatory) write-ups. Given the Seventh Circuit's very low standard for pleading employment discrimination, Baker has managed to clear the hurdle of a motion to dismiss, if just barely. The motion is denied as to the race discrimination claim.

### III. Disability Discrimination

To prevail on a claim of disability discrimination, the plaintiff must show she is (1) disabled under the Americans with Disabilities Act ("ADA"), (2) qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. *See EEOC v. Lee's Log Cabin, Inc.,* 546 F.3d 438, 442 (7th Cir. 2008). Baker's only allegation of disability discrimination is that she suffered a "disability based hostile work environment." Compl. ¶ 47. The Seventh Circuit has repeatedly declined to decide whether or not a hostile work environment claim is ever cognizable under the ADA. *See Holyfield-Cooper v. Bd. of Educ. of Chi.*, 604 F. App'x 504, 508 (7th Cir. 2015); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009). However, assuming that such a claim is cognizable, Baker's claim fails on other grounds.

To meet the first element, Baker must have alleged that she is "disabled." A person is "disabled" within the meaning of the Americans with Disabilities Act when she has "a physical or mental impairment that substantially limits one or more of [her] major life activities," a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

Baker has alleged that she suffers from scleroderma, a connective tissue disease that causes "the hardening of the skin on the fingers, toes, and face" which can "also affect the esophagus, kidneys, and heart." Compl. ¶ 9. Baker alleges that she specifically has "constant fatigue," "pain in joints and muscles," and cracked and infected skin on her fingers and toes. *Id*. at ¶ 10-11. Baker also has depression and anxiety "as a result of her disease." *Id*. at ¶ 13. She takes "numerous mediations to treat her disease and for diagnosed anxiety." *Id*. at ¶ 14. Baker has not alleged or explained, however, how either of these diseases substantially limits any major life activity. A plaintiff must allege sufficient facts for the Court to determine whether or not she plausibly is a qualified individual under the ADA. *See Gogos v. AMS Mechanical Systems*, 737 F.3d 1170, 1172 (7th Cir. 2013). This alone is sufficient to dismiss her disability discrimination claims.

Furthermore, Northwestern correctly points out that in her EEOC charge, Baker only claimed scleroderma, not anxiety. *See* Compl. Ex. A. A plaintiff must generally exhaust a claim before the EEOC before filing a lawsuit under the ADA. *See Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008). In order for a plaintiff to sue for allegations not discussed in her EEOC charge, the allegations must be "like or reasonably related to the allegations of the charge." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A charge regarding Baker's physical disability is not "like or reasonably related to" allegations of a psychological disease, especially one that appears to have been separately diagnosed and treated. *See O'Connell v. Cont'l Elec. Const. Co.*, No. 11 C 2291, 2011 WL 4916464, at *4 (N.D. Ill. Oct. 17, 2011) (finding that administrative charge regarding cancer did not cover anxiety and depression and citing cases). Failure to exhaust is another sufficient ground to reject Baker's claims regarding any discrimination based on her anxiety.

Finally, Northwestern correctly asserts that Baker has failed to state a plausible claim for disability discrimination. Baker never alleges that Carter, who allegedly created the hostile work environment, was aware of any of her medical conditions (despite a lengthy list of other staff who were aware). *See* Compl. ¶ 15. Thus, Carter's alleged harassment could not have been on the basis of any disability. Furthermore, the only remarks allegedly made by Carter are psychiatric-related insults such as "is your medication working," "don't forget to take you medication," "you should get a bigger piece of paper to write your complaints to your psychologist," and "you are insane." *Id*. at ¶ 16. These are not comments that appear in any way related to Baker's physical disease (the only one for which she has exhausted administrative remedies). Carter also only made these comments after Baker was forced to participate in the Employee Assistance Program, which also indicates the remarks were not about her physical disability. *Id*. at ¶ 22. Taking a few offhand remarks about mental stability to state a claim for a hostile work environment over a distinct physical disability is an unreasonable inference that the Court will not draw. For these reasons, the Court grants the motion to dismiss the disability claim.

\*     \*     \*

For the reasons stated, Baker's claims for sexual harassment and racial discrimination—though far from compelling—are sufficient to survive the defendant's motion to dismiss. The Court grants the motion to dismiss as to the disability discrimination count with prejudice, as Baker cannot now cure her failure to exhaust. Defendant's answer to the third amended complaint is due by July 21, 2017. This case will be referred to the assigned Magistrate Judge for discovery scheduling and supervision.

Dated: July 7, 2017

John J. Tharp, Jr.
United States District Judge